## Reeder, Admr., *v.* Trullinger & Co., Appellants.

*Parol defeasance—Evidence sufficient to establish.*

A deed made before the passage of the act of June 8, 1881, though in form absolute, may be shown by parol evidence to be a mortgage, but such evidence must be clear, convincing and explicit. The evidence in this case held sufficient.

*Bill in equity for conveyance—Remedies.*

Where the defendant in a bill in equity for a conveyance has, by a prior conveyance, put it out of the power of the court to order a reconveyance, a compensation in damages may be awarded in lieu thereof; and plaintiff may elect to treat the purchase money as the measure of damages.

*Bill for account—Practice—Opportunity to state account.*

Where defendant is found liable to account, he should be afforded an opportunity to state the same before entry of final decree.

Argued April 18, 1892. Appeal, No. 84, July T., 1891, by defendants, Geo. Trullinger, Geo. Pancake and Alfred Pancake, trading as Geo. Trullinger & Co., from decree of C. P. Centre Co., Aug. T., 1882, No. 133, for plaintiff, in bill for conveyance or account, by Wilbur F. Reeder, administrator of Geo. M. Hertline, deceased. Before PAXSON, C. J., GREEN, WILLIAMS, MITCHELL and HEYDRICK, JJ.

Bill to compel conveyance or for account.

The facts appear by the opinion of the Supreme Court. The bill was filed by Hertline, who died pending the suit, and his administrator was substituted. The case was referred to D. F. Fortney, as master, who filed a report recommending that the bill be dismissed. The court below, in an opinion by KREBS, P. J., sustained exceptions, and after reviewing the facts as stated in the opinion of the Supreme Court, found, in addition, that defendants on July 21, 1881, sold the four fifth interest in the premises to Jacob Tome for $150,000, and that they paid Boak, through Tome's check, $10,000. The court below further found:

"10. We are of the opinion and so find as a fact, that the deed of 8th of June, 1880, from Boak to Trullinger et al. was taken by them to be held as a security for the $10,000 to be paid by them to Boak out of the cutting of the timber. In

support of this finding we have the testimony of George R. Boak, Cameron Boak and Theodore Boak, disinterested witnesses, and also the fact that when Trullinger & Co. were about to sell to Jacob Tome they consulted the claimant in reference thereto." [1]

"13. We also find that Hertline stocked under some arrangement with defendants in the season of 1880–1881 from this land 2,927,267 feet of timber and during the next season, or the early part of 1881, 820,085 feet; that these logs were by agreement put to what is known as Crider's mill and that the plaintiff was to receive $3.25 for this work and that he received from the defendants in money, as shown by his own account, $14,546.80, and according to the testimony of the defendants the sum of $14,583.10." [2]

"The order or decree of the master dismissing the complainant's bill must be reversed and the defendants held to an account." [3]

"It follows then from the findings of fact and our conclusions of law thereon that the master erred in dismissing the bill, and that an account should be stated, which we may state as follows:

| | | |
|---|---|---|
| 21st July, 1881, defendants received from plaintiff's account on one-fifth interest, . . . . | | $17,500 |
| By amount paid to Boak, Tome check, | $10,000 | |
| By amount paid to Boak, Tome check, . | 2,304 | |
| | | ————$12,304 |
| | | $5,196 " [4] |

"And now, 9th May, 1891, it is adjudged, ordered and decreed that George Trullinger, Alfred A. Pancake and George Pancake together, or some of them, pay all costs to be paid unto Wilbur F. Reeder, administrator of George M. Hertline, deceased, the sum of ($5,196) five thousand one hundred and ninety-six dollars, with interest from the 1st day of October, 1881, together with the legal costs incurred in this proceeding." [5]

*Errors assigned* were (1–5) findings of court and decree, as above, quoting them; and (6) in overruling the findings of the master and not dismissing the bill.

*John H. Orvis* of *Orvis, Bower & Orvis,* with him *Beaver, Gephart & Dale* and *Weiss & Gilbert,* for appellants.

*Wilbur F. Reeder,* of *Hastings & Reeder,* for appellees.

OPINION BY MR. JUSTICE HEYDRICK, October 3, 1892.

The first error assigned, and that to which the arguments of counsel were mainly directed, is that the learned court below, reversing the master, found that the deed of George R. Boak and wife to the defendants, though absolute upon its face, was intended as a security for the payment of money. Counsel do not differ as to the principles by which the court should have been guided when dealing with the question involved in this finding. On the one hand it is conceded that a deed made before the passage of the act of June 8, 1881, though in form absolute, may be shown by parol evidence to be a mortgage, and on the other hand it is not denied that for such purpose the evidence must be, as was said in Todd v. Campbell, 32 Pa. 250, clear and convincing, or as was said in Plumer v. Guthrie, 76 Pa. 441, clear and explicit. We need therefore only consider whether the evidence upon which the court found the controverted fact, came up to the well settled standard.

By deed dated the 13th day of October, 1868, George R. Boak, the three defendants and another acquired title to twelve tracts of land; but as his cotenants paid or undertook to pay the whole of the purchase money, amounting to $50,000, Boak by writing of even date agreed that his cotenants should "have and receive all the benefits, issues and profits" of the lands until they should be reimbursed the purchase money paid by them, "together with all interest, costs and expenses" by sales of timber or other material on the lands. In consideration of $5,000 paid and the farther sum of $5,000 to be paid, Boak, by writing dated the second day of September, 1872, agreed to sell his interest in the lands to George M. Hertline, the plaintiff's intestate. Hertline, having paid three thousand dollars of the deferred payment, failed to pay the residue, and on the third of September, 1874, confessed judgment in favor of Boak for that residue and other moneys amounting in the aggregate to $6,000. In execution of this judgment Hertline's interest in the lands was seized and sold by the sheriff, and purchased by Boak under a verbal agreement

that he would buy the interest and hold it subject to Hertline's right to redeem it by paying the balance of the debt and interest due from him to Boak. In pursuance of this verbal agreement Boak, on or about the first day of June, 1880, made a contract in writing, since lost, by which he agreed, in consideration of $10,000 to be paid, to convey one undivided fifth part of the lands to Hertline, and also assign and transfer to him a contract which he had with the defendants for cutting and delivering logs into a boom. By the terms of the latter contract the defendants were to pay $4.25 per thousand feet board measure for cutting and delivering logs, and it was stipulated in the contract between Boak and Hertline that the latter should leave fifty cents of this sum per thousand feet in the hands of the defendants to be paid by them to the former until he should have received the whole sum of $10,000 agreed to be paid to him by Hertline. But the contract between Boak and the defendants could not be assigned by either party without the written consent of the other, and therefore Boak and Hertline after having made their contract in writing at Bellefonte repaired to Harrisburg to obtain the consent of the defendants to the transfer of the " logging contract," and to get them to become security, as they called it, for the payment of the fifty cents per thousand to Boak; S. C. Boak, a brother of George R., accompanying them.

So far the facts were found by the master and there does not appear to have been any serious dispute about them. What occurred at Harrisburg when the parties first met is most clearly told by S. C. Boak. He says: " We stated our business to Pancake. He seemed to be acquainted with it. We told him we had sold our contract to Mr. Hertline, and George had sold his one fifth interest to him and gone there to know whether they were satisfied to have the logging contract transferred, and if so, whether they would secure the payment of the amount with Mr. Hertline or pay us when the sale was made. We talked over the matter awhile, and Mr. Pancake did not care about securing the debt unless there was something to secure them, and he spoke of having the deed made direct to him for the one fifth that George had sold to Hertline. That was the security they wanted. They were satisfied to make the sale to George M. Hertline of the logging

contract which George had sold with the timber to him. Hert-line assented that the deed for the one fifth interest should be made by George R. Boak to Trullinger & Co. as security for them." The agreement thus reached was not consummated by writing on that day; the Boaks and Hertline returning to Bellefonte, as may be inferred from George Boaks' testimony, to prepare the necessary papers. He says: "We came back again and I think Mr. Blanchard drew up the second agreement as to what we supposed would answer Messrs. Trullinger & Co., and I sent Theodore Boak, my brother, down with Mr. Hertline to get the thing closed up and they did not get it closed up. . . . I went down. Then Mr. Pancake said they would not accept that; and they talked it over, Martin and him, and went out and talked it over and came in and said I should make a deed. I think they said the deed was to be made direct to them. . . . Then instead of conveying direct to Hertline according to my agreement with him it was arranged that I convey direct to Trullinger & Co., and then in that event they would secure that fifty cents per thousand which Hertline had agreed to pay." Theodore Boak corroborates George and states the agreement in pursuance of which the latter made the conveyance to the defendants instead of to Hertline, more fully. He states explicitly that the deed was so made at the instance of Hertline to secure the defendants for becoming responsible to George R. Boak for the payment of the purchase money and in pursuance of an agreement to that effect between the three parties. No other meaning can be given to his testimony which is quite full upon the subject. Hertline was examined in his own behalf, but was not as clear in his statements as the Boaks, and upon cross-examination evidently misunderstood a question, and in consequence apparently contradicted S. C. Boak's testimony as to an agreement having been made at the first meeting in Harrisburg. But his testimony in chief corroborated S. C. Boak, and it is clear that when, in reply to the question of the defendant's counsel, "Then you did not make the arrangement (about the deed) when he (George Boak) was present?" he said "We made the article; he just talked of having the article of agreement; we didn't talk about the deed then," he had reference to the time when the contract between him and Boak was made,

and not to the first meeting at Harrisburg.   The testimony of
the four witnesses, though differing in details, and somewhat
in respect to dates, is in substantial harmony.   The testimony
of S. C. Boak, corroborated by Hertline and George Boak, as
to an agreement made at the first meeting in Harrisburg, is not
in conflict with the testimony of Theodore Boak, corroborated
by George and Hertline as to a like agreement made at the
last interview.   It is not at all improbable that the parties,
after reaching an understanding at the first meeting and sepa-
rating, should when they came together again have some differ-
ences and farther negotiations, and finally settle down upon
substantially their first agreement.   We have then an agree-
ment twice repeated, each time proved by three witnesses, that
the deed which George R. Boak had covenanted to make to
Hertline, should be made to the defendants as security for
their undertaking in Hertline's behalf in respect to the pay-
ment of the purchase money.   That a change was made in re-
spect to the logging contract and the form of the defendants'
engagement in respect to the purchase money that had been
agreed to be paid by Hertline to Boak is wholly immaterial.
In the absence of any evidence whatever that Hertline aban-
doned his rights under his contract with Boak, the defendants
could not take title to his prejudice, whatever their intentions
may have been ; they had distinct notice of his rights whether
they actually saw his contract or not, and the conclusion is
well nigh irresistible that they saw it.   Four witnesses testify
that it was taken to Harrisburg; three that it was present in
the defendants' office during the negotiations; one's recollec-
tion was that George Pancake read it, another testified that its
purport was stated to the defendants ; two that it was " talked
over," and one that to the best of his knowledge it was left in
the defendants' office.   It is impossible to believe the evidence
of these witnesses, and it is unimpeached, without coming to
the conclusion that the defendants had full knowledge of Hert-
line's rights before they took the conveyance and that they
took it as security for their engagement in his behalf.   The
first assignment of error is not sustained.

We cannot say that the court below was not justified in its
thirteenth finding.   There was evidence from which the fact
might have been found, and it may well be doubted whether the

testimony of Hertline's employees as to loose declarations made to them two or three years before about a matter which did not concern them was sufficient to overcome it. The second assignment of error is not sustained.

The deed of Boak and wife to the defendants having been made at the instance of Hertline, to whom Boak had covenanted to convey, to secure the grantees for purchase money paid or undertaken by them to be paid to Boak, is in substance and effect a mortgage by Hertline to the defendants, who were already in possession under a prior contract with Boak. The court had, therefore, jurisdiction to decree an accounting between the parties in respect to the profits of the land and the indebtedness of the plaintiff to the defendants, and also to decree a conveyance upon payment of the amount, if anything, that should be found due to the defendants if they had not put it out of their power to convey. But the defendants having sold and conveyed the lands to another the plaintiff is not for that reason without remedy in this action. "It is well established that wherever a court of equity has jurisdiction, if the relief prayed for cannot for some reason be granted, a compensation in damages may be awarded in lieu thereof:" Masson's Appeal, 70 Pa. 26. And where a defendant has put it out of his power to make a conveyance which otherwise the court would have decreed, by conveying the premises to another, the plaintiff may elect to treat the purchase money received by him as the measure of damages: Fessler's Appeal, 75 Pa. 483. It follows that the plaintiffs are entitled to a decree not only that the defendants account with him in respect to the profits received from the land, but that they pay to him so much, if any, of the proceeds of the sale of his intestate's interest in the land as may be in excess of the amount that may be found due to the defendants upon the accounting. But until it was determined that the defendants should account they were not bound to bring in their account. The cause was, therefore, not ripe for a final decree but should have been referred to a master to take an account. In such account the defendants will be entitled not only to the credits given by the court below, but to farther credits for the purchase money advanced to Boak's vendors "together with all interest, costs and expenses" as provided in the contract of October 13, 1868, and

will be chargeable with all profits derived from the land as well as with one fifth part of the purchase money received from Tome. Because the court did not afford the defendants an opportunity to bring in their account after their liability to account had been determined, the decree must be reversed.

And now, October 3, 1892, the decree of the court below is reversed, and the record is remitted with instructions to the court below to take an account in accordance with this opinion.