# McDonald *v.* McAndrew, Appellant.

*Ejectment—Equitable ejectment—Trust ex maleficio—Evidence.*

1. An equitable action of ejectment to enforce a trust of real estate ex maleficio is in reality a substitute for a bill in equity, and is governed by the rules of evidence applicable to a chancery suit. If the evidence is too vague, uncertain or doubtful to establish the equity set up, even if believed, it is the duty of the judge to withdraw it from the jury either by a nonsuit, or a binding direction in his charge as the case may require. The burden is upon the plaintiff in such a case to prove her equitable right by evidence that is clear, precise, convincing and indubitable.

2. A promise, declaration or misrepresentation which will create a trust ex maleficio must be made before or at the time the legal title is acquired by the promisor; for nothing subsequently said by the grantee will turn an estate that had passed absolutely from the grantor into a trust for others.

3. In an equitable ejectment plaintiff claimed that her grandmother had executed a deed for a house and lot and a vacant lot, to an aunt, on the express agreement and promise of the aunt to the grantor to convey the vacant lot to the plaintiff. One witness who was present when the deed was made, testified positively to the making of the promise as to the conveyance of the vacant lot. This witness was corroborated to some extent by admitted or undisputed circumstances. Two witnesses for the plaintiff testified to direct admissions of the

defendant made at different times while she was the legal owner of the land, not merely of her intention to deed the land to the plaintiff, nor merely in the nature of promises to do so, but that she had promised the grantor at the time the deed was made that she would deed the vacant lot to the plaintiff.   *Held,* that the evidence was sufficient to sustain a verdict for plaintiff for the vacant lot.

Argued March 3, 1909.   Appeal, No. 15, March T., 1909, by defendant, from judgment of C. P. Lackawanna Co., Nov. T., 1906, No. 282, on verdict for plaintiff in case of Mary McDonald v. Mary Ann McAndrew.   Before RICE, P. J., PORTER, HENDERSON, MORRISON, HEAD and BEAVER, JJ.   Affirmed.

Ejectment for a lot of land in the city of Scranton.   Before NEWCOMB, J.

The opinion of the Superior Court states the case.

At the trial the court charged in part as follows:

[The plaintiff depends upon the testimony of Mr. Lynn as to what happened at the time of the deed, and seeks to corroborate his testimony by that of herself and her husband as to some alleged admissions claimed to have been made by Mrs. McAndrew since the deed was made.   The pinch in the case is, as I have suggested, whether the evidence is clear, precise, certain, convincing and indubitable.   Remember that Mr. Lynn is the only witness that undertakes to speak as to what happened at the time when the deed was brought up there, having been prepared by the attorney, and the alderman was called in for the purpose of taking the acknowledgment.   Does the plaintiff to your satisfaction bring the parties together at that time and show that a promise was then and there made when the parties to the deed, namely, Mrs. Lynott and her daughter, Mrs. McAndrew, were together in the room where the deed is said to have been signed and evidently was signed and was witnessed by Mr. Lynn?   Are you satisfied of that?   It seems to me that that is a debatable question.   Mr. Lynn himself says in that connection that he took Mrs. McAndrew out in another room and there questioned her with regard to some alleged previous understanding or promise as to what she would do with lot 17, and, as I understand, that

after that interview in that room he came back in where the transaction was being consummated and said, "It is all right." That in itself may seem doubtful as tending to show that there was any promise then and there made by Mrs. McAndrew to Mrs. Lynott. I take it that the theory of the plaintiff is and the claim of Mr. Lynn is that the negotiations had been going on for some time before that and it had finally culminated in the offer on the one side and the assurance on the other, the offer being made by Mrs. Lynott, "I will make this deed to you upon condition that you will when Mary [the niece, Mary Franklin] becomes of age convey 17 to her," and that the offer was accepted by the assurance on the part of Mrs. McAndrew that she would do that. Mr. Lynn takes the position as I understand him, but, of course, that is for you and not for me, that when it came time to consummate the thing, for his further personal assurance he took the cousin, Mrs. McAndrew, out into the other room and asked her if she would do that. Of course that might be. If the evidence satisfies you and fully and indubitably convinces you that that is what happened, then of course it would be such a connection between the making of the deed and the promise that it would not affect the continuity of the transaction and it could be said by the jury to form one transaction.] [1]

Defendant presented these points:

1. Under all the evidence in this case, the verdict must be for the defendant. *Answer:* I am not prepared at this time to say that, and the request is therefore refused. [2]

3. In this case the jury must find some fraudulent act on the part of the defendant through which the title has been obtained, and the evidence of such fraudulent act must be clear, precise and convincing in order to find for the plaintiff. *Answer:* That is affirmed with the same qualification that it would be a fraudulent act if the defendant procured an estate from her mother upon the assurance that she would do a certain thing with part of it and afterwards faithlessly broke the promise, that would be a fraudulent act. [3]

Verdict and judgment for plaintiff for the land in dispute. Defendant appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*Samuel B. Price*, for appellant.—No part of a parol trust can be left to inference; the proof to establish it must in all particulars be clear and specific: Brickell v. Earley, 115 Pa. 473.

Lynn is the only witness, and in such a case as this there must be two witnesses, or corroborating circumstances equivalent to another: Fuller v. Law, 207 Pa. 101; Building Assn. v. Hetzel, 103 Pa. 507; Streator v. Paxton, 201 Pa. 135.

While the parol evidence is admissible to prove fraud and mistake, it is insufficient for that purpose unless clear, precise and indubitable: Pioso v. Bitzer, 209 Pa. 503; McCloskey v. McCloskey, 205 Pa. 491; Reno v. Moss, 120 Pa. 49; Moore v. Small, 19 Pa. 461.

*W. L. Houck*, of *Houck & Benjamin*, with him *Willard, Warren & Knapp*, for appellee.—When one procures from another a gift of the whole of that other's estate, on a promise to give part of it at death for a special purpose, or to a particular individual, the fulfillment of the moral obligation will be enforced in a court of equity, because to the moral obligation there is added the force of a legal one; the estate of the donor is parted with on the faith of the promise: Hoffner's Est., 161 Pa. 331; Thompson v. White, 1 Dallas, 424; Hoge v. Hoge, 1 Watts, 163; Sheriff v. Neal, 6 Watts, 534; Seichrist's App., 66 Pa. 237; Brooke's App., 109 Pa. 188; McCloskey v. McCloskey, 205 Pa. 491; Jones v. McKee, 3 Pa. 496; Perry v. Livingston, 191 Pa. 349.

As to the evidential weight of the declarations and admissions of the defendant, and their admissibility, we refer to the case of German et al. v. Gabbald, 3 Binney, 301. See also Gregory v. Setter, 1 Dall. 193; Hoge v. Hoge, 1 Watts, 163; Church v. Ruland, 64 Pa. 432.

OPINION BY RICE, P. J., July 14, 1909:

This was an action of ejectment. Mary A. Lynott was the owner of two adjoining lots known in the case as Nos. 17 and

18, in a certain block. Eighteen was improved with the dwelling house in which she lived; the other was vacant. She owned no other property of consequence. Some years ago she had devised the property to one of her sons, who had his home with her. January 1, 1905, she broke up housekeeping and went to live with her daughter, the defendant. She was then old, and complained that she was being neglected by the son. She survived about one year after that. The plaintiff is her granddaughter, the child of a deceased daughter. Her maiden name was Mary Franklin. She and a cousin, Edward Lynn, were boarders in defendant's family while Mrs. Lynott lived there. The disposition of her property was discussed by the old lady with some anxiety on various occasions between herself, her daughter, and the nephew, Mr. Lynn. She expressed her desire to alter the will and to devise the property to the daughter and granddaughter. Lynn advised her that she could give it to them by deed. This she eventually decided to do, but at the request of the defendant she conveyed both parcels to her, September 25, 1905, upon the faith of the latter's promise to reconvey No. 17 to her niece, Mary Franklin, upon the latter becoming of legal age. The defendant now denies the promise and refuses to convey.

The foregoing clear, concise and accurate statement of the findings of fact implied in the verdict of the jury is taken from the opinion of the learned trial judge discharging the defendant's rules for new trial and for judgment non obstante veredicto. If the case were governed by the principles of law and evidence applicable to an ordinary action at law, it would scarcely be pretended that the evidence adduced by the plaintiff, if believed by the jury, was not sufficient to sustain the findings and the verdict based thereon. But although the action, in form, was an action at law, it was in reality a substitute for a bill in equity brought to have declared, and to enforce, a trust ex maleficio, and was governed by the same principles. "It is not the substitution of twelve unlearned chancellors for a lawyer prepared for his office by the lucubrations of twenty years. The judge in reality is the chancellor with the assistance of a jury. It is not like other ordinary trials at law, where any

evidence reasonably tending to prove a fact must be submitted to be passed upon by that tribunal. The conscience of the judge as chancellor must be satisfied, and what goes to the jury is to determine the credibility of the witnesses, and to weigh and decide upon the force and effect of conflicting testimony. What is this but the trial of a feigned issue out of chancery? If the evidence is too vague, uncertain or doubtful to establish the equity set up, even if believed, it is the duty of the judge to withdraw it from the jury either by a nonsuit or a binding direction in his charge, as the case may require: McBarron v. Glass, 30 Pa. 133; Todd v. Campbell, 32 Pa. 250; Bennett v. Fulmer, 49 Pa. 155; Miller v. Hartle, 53 Pa. 108:" Church v. Ruland, 64 Pa. 432. These principles were clearly recognized and brought before the jury in the following as well as in other parts of the charge: "The sole question in the case that you have to determine is this: Did the defendant procure the deed for the two lots 17 and 18 from her mother, Mrs. Mary Lynott, upon the faith of a distinct promise to convey lot 17 to her niece, and is it a fact that without the promise the mother would not have given the deed? That is the issue. That is what the plaintiff asserts and that is what she must prove in order to warrant the jury in finding a verdict in her favor. And she must prove it by more than a fair preponderance of evidence, which is the rule governing ordinary civil suits tried in this court. A fair preponderance of the evidence would be of no value to her whatever. But the burden is upon her to prove to your satisfaction by evidence that is clear, precise, convincing and indubitable that that was the way the defendant got this deed and that without such promise she would not have got it. So you see, in order to recover she has to satisfy your minds and consciences by evidence that leaves you free from uncertainty and substantial doubt. The promise even if made must have been made at the time the deed was executed or within such time before that; the deed and the promise formed one transaction. She may have made such promise afterwards, but that would be of no consequence, it must be at the time the deed was made or within such time prior thereto that the two things, the deed on the one side and the promise on the other,

formed one single transaction." It is true there is an expression
in another portion of his charge, which is made the subject of
the first assignment, which might be taken as an intimation
that he entertained a doubt as to the sufficiency of the evidence
to establish the fact of a promise made at the time of the exe-
cution of the deed. But in disposing of the rule for judgment
non obstante he took up the question whether the evidence was
sufficient to warrant the verdict and to satisfy his conscience
as a chancellor, and said: "It is enough to say that whatever
doubt might have been felt at the trial is now dispelled upon a
careful review of the evidence. It is believed to have been
amply sufficient to support an affirmative answer to the ques-
tion as submitted, viz.: 'Did the defendant procure the deed
for the two lots 17 and 18 from her mother, Mrs. Lynott, upon
the faith of the distinct promise to convey lot 17 to her niece,
and is it a fact that without the promise the mother would not
have given the deed? That is the issue.' The evidence of what
took place both before and at the time the deed was executed,
upon which plaintiff relied, lacked nothing in precision and
certainty if it were believed. In legal effect then the facts
establish not a mere parol trust created by contract, thus being
within the statute of frauds of 1856. The trust results by oper-
ation of law from the abuse of a confidence reposed in the
grantee to carry out the intention of the grantor. As such it is
within the proviso of the statute relating to trusts arising by
legal implication." These extended quotations from the charge
and the opinion show beyond question that the case was not
tried upon any erroneous theory as to the facts essential to the
creation of a trust ex maleficio, as to the quality and degree of
proof required to establish them, or as to the functions of the
court and jury. If any error was committed it was in not hold-
ing that the evidence did not come up to the standard which
the learned judge set.

The rule that in such cases the evidence must be clear, pre-
cise and indubitable does not mean that there must be no op-
posing testimony but that the testimony must carry a clear
conviction of its truth. So that our first inquiry should be
whether the evidence adduced by the plaintiff, although con-

tradicted, was clear and precise, and was sufficient to carry to the mind of a chancellor a clear conviction that the inducing cause of the conveyance of the two lots to the defendant was her promise to deed the lot in question to the plaintiff. In determining that question the principle thus clearly expressed in McCloskey v. McCloskey, 205 Pa. 491, must be kept in view. "But unkept promises, declarations or misrepresentations, which will create trustees ex maleficio must be made before or at the time the legal title is acquired or the devise made; for nothing subsequently said by a grantee or devisee will turn an estate that had passed absolutely from the grantor or testator into a trust for others. The land of a grantor or testator, who alone can impress it with a trust, never passes from him so impressed, unless the impress is in writing, or he is induced at the time of his conveyance or devise to make it by reliance upon the pledged faith of his grantee or devise, subsequently broken, that his express wishes will be carried out."

It is argued that the testimony of Lynn, the principal witness, was not clear and precise as to the time and the language of the alleged promise, and in support of this counsel cites a portion of his cross-examination as showing that by his own admission he could not distinguish in memory between the conversations he had with the defendant separate and apart from her mother and those he had with her in the presence of her mother. We think counsel attaches too much weight to this testimony. When considered in connection with the context, the evident meaning of the witness was that he could not in every instance of the many interviews he had with the parties remember distinctly whether they were both present or only one was present. He evidently did not mean to retract or qualify his testimony as to what occurred on the very day of the execution of the deed. We deem it advisable to quote this testimony in the words of the witness rather than to attempt to state its substance in our own words. He says: "Q. Before she came down to Scranton what, if any, talk took place between her and her mother about the way in which the deed would be made out and what would be done after, if anything, about it? A. I tried to have the deed made out in both their names, but

Mrs. McAndrew wasn't satisfied, she wanted the property deed to herself. Q. What did she say, Mrs. McAndrew? A. She said if the deed was made in her name, Mary wasn't of age and there was some mortgage on the property and she stated how much; I don't know what it is now, I have forgotten, if the property was deeded to her she would deed over a lot to Miss Franklin. Q. Did they say which lot? A. The lot next to Michael's, the lot that didn't have the house on. Q. What did Mrs. Lynott say to that? A. She said then she was willing to make a deed when she seen her promise to give this girl, her granddaughter, this lot next to Michael's. Q. What did Mrs. McAndrew do? A. She immediately came down to Scranton, had the deed made out and had it all deeded to herself. Q. When she came back there who, if anyone, did she bring back with her? A. Alderman Gillespie of the North End. Q. Now before the deed was executed by Mrs. Lynott did you have a conversation with Mrs. McAndrew? A. Yes, sir; while the alderman was doing some writing I called Mrs. McAndrew into the kitchen right next to the dining room and spoke to her. Q. Tell us what that conversation was? A. I asked her if she intended to live up to the promise she had made to give Mary her part of the property, the lot next to Michael's; she said she would, she was no thief, she would give it to her, had no intention of cheating her." In connection with the latter part of this testimony there should be read the testimony of Alderman Gillespie, a witness called by the defendant. After having testified that he acquainted Mrs. Lynott with the contents of the deed, and being asked what else occurred, he testified as follows: "A. She spoke about having made a will and that this was all the property she had and it would do away with the will. Q. Anything else said? A. Yes, sir. She said she was going to give it to Mary or to Mrs. McAndrew and that she would do what was right." He also gave this significant testimony upon cross-examination: "Q. Now isn't it a fact that before the deed was acknowledged and while you were preparing the acknowledgment that Mr. Lynn and Mrs. McAndrew stepped out into the kitchen? A. I think that is correct. Q. And they had a conversation? A. I didn't hear what they said. Q. They were

out there for some little time?  A. Yes, sir; a few minutes.
Q. And when they came back into the room Mr. Lynn said, 'It
is all right, Aunt Mary,' did he not?  A. He did.  Q. He told
her to sign it, 'it is all right, go and sign it'?  A. Yes, sir."
There is no uncertainty in this testimony as to the time of these
conversations; the first was immediately before the defendant
went to have the deed prepared and the other was at the very
time of the execution of the deed on the same day.  Nor is there
uncertainty or ambiguity in the inducing promise to deed a lot
to the plaintiff, or as to the lot to be deeded; it was the lot next
to Michael's that had no house upon it.  Nor is there any un-
certainty as to the promise having been made directly to Mrs.
Lynott, or as to her answer.  Nor is there any testimony as to
anything that occurred at that time going to show a change of
intention on the part of either.  If it be said that the fact that
this promise was the inducing cause rests on inference, the an-
swer is that such inference is the natural and irresistible con-
clusion from what was said and done before and at the time of
the execution of the paper, and may be relied on even though
Mrs. Lynott did not say in so many words, " I make this deed
induced by, and relying upon, my daughter's promise."    See
Sweetzer's Appeal, 71 Pa. 264, 273; Cullmans v. Lindsay, 114
Pa. 166, 171; White v. Black, 14 Pa. Superior Ct. 459, 470.

We need not take up time in commenting on the inconsis-
tencies in the defendant's testimony as to the consideration for
the deed.  But there is one part of the plaintiff's testimony upon
cross-examination which counsel for appellant regards as con-
sistent with the defendant's contention, or at least as casting
doubt on the plaintiff's allegation as to the inducing cause for
the conveyance.  It is as follows: "Q. Do you know that part
of the consideration of that deed was the fact that your aunt
had supported your grandmother?  A. She had only taken care
of her for a year.  Q. You don't answer the question.  I want
to know whether the deed wasn't given because she had sup-
ported her and agreed to support her during her life?  A. She
was willing to give her the house and lot; yes, sir.  Q. For that,
for the support?  A. For that; yes, sir."  When it is remem-
bered that Mrs. Lynott owned two lots, one with a house on it,

the other vacant, this testimony cannot be regarded as inconsistent with the plaintiff's allegation that the inducement for the conveyance of both lots to the defendant was the latter's promise to deed the vacant lot to the plaintiff.

Finally, it is argued that Lynn is the only witness, and in such a case as this there must be two witnesses, or corroborating circumstances equivalent to another. Socher's Appeal, 104 Pa. 609, cited by the plaintiff's counsel, is not necessarily in conflict with those cases in which the general rule as above stated is upheld; for in that case the answer was not responsive and the testimony of the witness called by the plaintiff was not contradicted. Here the facts upon which the plaintiff's equity rests are denied by the defendant, not only in her pleadings but in the evidence adduced by her. Hence we assume the applicability of the general rule as claimed by the defendant. But are not its requirements met by the evidence adduced by the plaintiff? As already pointed out the testimony of Lynn shows a definite promise at the time of the execution of the deed by the grantee to the grantor in which the cestui que trust was named and the land to be conveyed by the defendant was clearly described. He is corroborated to some extent, although perhaps not to the full extent required by the rule, by the admitted or undisputed circumstances. In addition the plaintiff adduced testimony of at least two witnesses of direct admissions of the defendant, made at different times, while she was the legal owner of the land, not merely of her intention to deed the land to the plaintiff, nor merely in the nature of promises to do so, but that she had promised the grantor at the time the deed was made that she would deed this lot to the plaintiff. As was said by Chief Justice TILGHMAN in German v. Gabbald, 3 Binney, 301, these confessions are not to be considered as a mere parol declaration of trust by her, but as evidence of a fact, by virtue of which a trust resulted by operation of law. See also Hoge v. Hoge, 1 Watts, 163. Viewing the testimony as a whole we are of opinion that it met the requirements of the rule, and that the verdict of the jury rendered under appropriate instructions and approved by the trial judge acting as a chancellor should stand.

The judgment is affirmed.