# White *v.* Black.

*Parol evidence—Explanation of—Written contract, when admissible.*

Where a document is silent on a particular subject, the subject may be proved, by parol evidence of what took place at the time of its execution, that a prior separate oral agreement, not inconsistent with the terms of the document or with any implied agreement growing out of it, was not intended to be abrogated.

In an action for rent due under an alleged parol lease where the defendant introduced as part of his defense a subsequent written lease, it was competent for the plaintiff in rebuttal to introduce evidence tending to show that the defendant did not go into possession under the lease last referred to ; that it was not executed until after the term had well progressed ; and that it was then signed and given to the defendant, at his request for the specific purpose, and for that purpose only, of being used by him to show in litigation then pending in court between him and a third person, that the plaintiff had admitted him in his own right as tenant of the premises.

*Explanatory parol evidence—Quality of proof.*

When it is said that parol testimony offered to explain a written contract must be clear, precise and indubitable, it is not meant that there must be no opposing testimony, but that it must carry a clear conviction of its truth.

*Charge of court—General effect when measure of error.*

When the complaint is that the charge is one-sided or inadequate and no particular error of law or misstatement of evidence can be pointed out, the court will be reviewed on the general effect of the charge and not upon sentences or paragraphs disconnected from the context which qualifies or explains them; if as a whole the charge was calculated to mislead, there is error, if not, there is none.

*Evidence—Effect in rebuttal to repel inference laid by defendant.*

Evidence of previous declarations of a witness for a plaintiff confirm-

atory of his testimony, is not admissible in the presentation of the plaintiff's case in chief, but such evidence may be admissible in rebuttal to repel an inference or argument for which the defendant had laid ground, that plaintiff's theory of claim was a fabrication of recent date.

Argued Dec. 14, 1899. Appeal, No. 43, Oct. T., 1899, by defendant, in suit of Jane White against Augustus Black, from judgment of C. P. No. 1, Phila. Co., June T., 1893, No. 271, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by RICE, P. J.

Assumpsit. Before BEITLER, J.

The facts sufficiently appear in the opinion of the court.

At the trial the court permitted plaintiff to testify against defendant's objection as follows:

[Mr. White: "Q. You got your rentals from them—did you lease them to one William Black?"

Mr. Shields: I object.

"A. Yes, sir, I did."

Mr. Shields: I object. We have nothing to do with the lease to William Black; the defendant here is Augustus Black.

Mr. White: I offer to prove that the defendant assumed William Black's lease.

Judge BEITLER: With that offer I will overrule the objection. Exception for defendant.] [1]

[Mr. White I offer in evidence the lease from Jane White to William Black for the store and dwelling, 2700 East Cumberland street, in the city of Philadelphia, for the term of one year from the 1st day of June, 1889, at the rent of $360 per annum, to be paid in equal monthly payments of $30.00, and providing, inter alia, that the lessee agrees to pay all extra water rents.

Mr. Shields: I object. The lease has not been admitted.

Judge BEITLER: Mr. Shields has a right to cross-examine on this lease.

Mr. Shields: I do not care to cross-examine on it.

Mr. White: I offer the lease in evidence.

Mr. Shields: I object.

Objection overruled. Exception for defendant.] [2]

[Mr. White: "Q. Did William Black go in possession under that lease?"

Mr. Shields: I object.

Objection overruled. Exception for defendant.

" A. Yes, sir."] [3]

[The court permitted plaintiff to offer in evidence, against defendant's objection, the notice to quit given by the plaintiff to the defendant, as administrator of William Black.] [4]

[The court admitted, against defendant's objection, the plaintiff's offer to prove that the written lease to Augustus Black was not intended by her to operate as such, as follows :

Mr. White: I propose to prove by this witness that the lease which has been produced here by Augustus Black, and which he states was a lease in writing which he went into possession under, was, as a matter of fact, delivered to him in the middle of the term after he had been in; that it was brought to Mrs. White by Augustus Black and her son Charles, and that Augustus Black stated at that time that he had a discussion going on in court between his sister, who remained there since William Black's time, and himself, and that he wanted to get her out of the house, and that it was necessary to have this in writing so as to produce it at the trial to show that he was the tenant of this lady; that he didn't go into possession under it, but that it was given to him simply for the purpose of showing his title, and not as the lease between the parties.

Mr. Shields : I object.

Objection overruled. Exception for defendant.] [5]

[The court admitted, against defendant's objection, plaintiff's offer to prove that the written lease to Augustus Black was not intended as a lease, as follows:

Mr. White: I propose to prove by this witness that the lease which has been produced here by Augustus Black, and which he states was a lease in writing which he went into possession under, was, as a matter of fact, delivered to him in the middle of the term after he had been in; that it was brought to Mrs. White by Augustus Black and her son Charles, and that Augustus Black stated at that time that he had a discussion going on in court between his sister, who remained there since William Black's time, and himself, and that he wanted to get her out of the house, and that it was necessary to have this writing so as to produce it at the trial, to show that he was the tenant of this lady; that he didn't go into possession under it, but

that it was given to him simply for the purpose of showing his title, and not as a lease between the parties.

Mr. Shields : I object.   Objection overruled.   Exception for defendant.] [6]

[The court admitted, against the defendant's objection, the plaintiff's offer to identify the notice given by the plaintiff to the defendant, that she would hold him for the rent of the ensuing year, as follows :

Mr. White : I propose, further, to show by this witness—I wish to identify the notice which was given to Augustus Black on June 1, 1892—that Mrs. White would hold him for the rent if he moved out, not having given her the three months' notice. I wish to do that in order to rebut the evidence introduced by Mr. Shields when he offered the court record, that this lady had, by amending her statement, showed for the first time that she claimed to hold him under the old lease, and to show that even then, before any statement was filed, that this lady notified him that she intended to hold him for lack of the three months' notice.] [7]

The court charged the jury in part as follows :

[The lease which is produced here and which is signed by Augustus Black—and it is admitted that she gave him that lease—binds her unless she can show you by clear, precise and satisfactory proof that a fraudulent use is being made of it by Augustus Black.

The law encourages the putting of contracts into writing ; encourages it because it prevents disputes and ill feelings between neighbors and business men, and because it results in men knowing just where they stand, if they had their contracts in black and white.   The law says that these papers shall have a sanctity given to them; that they shall be considered just as they are written, except in some well-defined cases, and one case is where the party holding the paper attempts to make a fraudulent use of it; and I propose to leave it to you in this case to say whether the party who attempts to escape from the lease, Mrs. White, has satisfied you that Augustus Black is attempting to make a fraudulent use of the paper.] [10] . . . .

[Is there anything in the testimony of these two people that without reasonable doubt leads you to believe that this man is

not making a fraudulent use of that paper in producing it before you to show it was the lease under which he was a tenant?] [11] . . . .

[The plaintiff says even if this lease was executed just as Augustus Black says it was, and that it was the lease under which he held possession, he was liable and in possession if he stayed in after the close of the year, and that is true as a matter of law, and the plaintiff says she saw skids and barrels on the pavement; that she saw people moving skids and barrels across the street from her property to the property on the other corner, which, on June 1, 1892, the defendant occupied. My recollection is, and I want you to take yours and not mine, is that she did not mention the fact that they were being taken out of the cellar until the close of her testimony, and then did say that she saw people moving barrels from the pavement of one property to the other property, and she added: "I saw people taking things out of the cellar." If on the 2d or 3d day of June the defendant was in possession of that property he was in for a whole year, whether he gave up the key or not.] [13] . . . .

[Suppose you ignore Augustus Black's testimony; but you cannot do that without you find something in the case to warrant you in doing that.] [14]

Verdict and judgment for plaintiff for $432.63. Defendant appealed.

*Errors assigned* among others were (1–7) to rulings on evidence, reciting same. (10, 11, 13, 14) To portions of the judge's charge, reciting same. (15) The charge of the court was erroneous and misleading in that it did not fairly and fully present both sides of the case to the jury.

*A. S. L. Shields,* for appellant.—On the face of the pleadings, therefore, it appeared that there was but one written lease between the parties (that averred in the affidavit of defense), which consequently could not be impeached or contradicted by parol evidence of the matters alleged in the statement without an allegation of fraud, accident or mistake: Hunter v. McHose, 100 Pa. 38; Wodock v. Robinson, 148 Pa. 503; Wyckoff v. Ferree, 168 Pa. 261.

The learned trial judge erred in admitting in evidence the notice to quit given by the plaintiff to the defendant during his tenancy as administrator of William Black.

The learned trial judge erred in admitting the evidence offered to show that the written lease from the plaintiff to Augustus Black was not intended by her to operate as a lease, because that evidence tended to show fraud neither in the procuring of the lease nor in subsequently adducing it as a lease.

Even if it be admitted that the testimony of the plaintiff and her son was unimpeached and uncontradicted, and therefore to be taken as true, it would fail to show any representations on the part of the defendant on which fraud could be predicated. Finally, there was no allegation by the plaintiff that she would not have executed it if it were not for the representations made, whatever they were, and consequently the evidence given was not admissible, because it did not possess the requisites necessary to authorize the admission of parol evidence to contradict a written instrument. Such evidence is admissible only when there has been fraud, accident or mistake in the creation of the instrument itself, or where there has been an attempt to make a fraudulent use of the instrument in violation of a promise or agreement made at the time the instrument was signed and without which it would not have been executed: Thorne v. Warfflein, 100 Pa. 519; Phillips v. Meily, 106 Pa. 536; Cloud v. Markle, 186 Pa. 614.

As has been shown the evidence offered failed to prove either of these requirements, and consequently the learned trial judge was in error in permitting it to go to the jury, for " where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best but the only evidence of their agreement, and we are not disposed to relax the rule : " Martin v. Berens, 67 Pa. 459; Rowand v. Finney, 96 Pa. 192; Irvin v. Irvin, 142 Pa. 271, 287.

The learned trial judge erred in admitting the evidence offered to contradict the written lease, because the effect of that evidence was not merely to change or alter the contract contained in the lease, but to destroy it entirely, and consequently to nullify the instrument: Clarke v. Allen, 132 Pa. 40; Stull v. Thompson, 154 Pa. 43.

Even upon the theory that the lease was delivered only upon condition that it was only to be used as evidence of the defendant's tenancy, the evidence is still inadmissible, for the lease was delivered to the defendant himself, and it is well settled that such a delivery is absolute, and extinguishes all conditions: Newman v. Baker, 10 D. C. App. 187; Blewitt v. Boorum, 142 N. Y. 357; Moore v. Winans, 23 App. Div. (N. Y.) 308; Simonton's Estate, 4 Watts, 180.

The learned trial judge erred in permitting the evidence given to go to the jury, because it was not of the quality required to contradict a written instrument: Rowan v. Finney, 96 Pa. 192; Ott v. Oyer, 106 Pa. 6; Phillips v. Meily, 106 Pa. 536; Thomas v. Loose, 114 Pa. 35.

The vice of these instructions consists in the fact that their inevitable tendency was to lead the jury to believe that the plaintiff could recover if she could prove that a use was being made of the lease by the defendant which would be fraudulent in the ordinary and not in the legal sense of the term, and though such use was not in violation of any agreement at the time the lease was executed.

The learned trial judge erred in referring only to the testimony of the plaintiff in reference to the defendant's actual possession of the premises after the expiration of the term.

It needs no argument to prove that such a presentation of this phase of the case was in the highest degree misleading and injurious to the defendant, and consequently erroneous, for it is always erroneous to refer in the charge to but one side of the testimony: Reber v. Herring, 115 Pa. 599; Reichenbach v. Ruddach, 127 Pa. 564; Minick v. Gring, 1 Pa. Superior Ct. 484; Larzelere v. Tiel, 3 Pa. Superior Ct. 109.

The learned trial judge erred in suggesting to the jury that they might ignore the testimony of the defendant.

It has been for many years the settled rule that when the charge of the court, taken as a whole, is inadequate and misleading, it constitutes error for which the judgment will be reversed, and that a charge is inadequate which does not fairly present the whole case to the jury with a clear statement of the rules of law applicable to the questions involved: Penna. R. Co. v. Berry, 68 Pa. 272; Gerz v. Weber, 151 Pa. 396; Howell v. Mellon, 169 Pa. 138; Tietz v. Phila. Traction Co.,

169 Pa. 516; Richards v. Willard, 176 Pa. 181; Herrington v. Guernsey, 177 Pa. 175; Hess v. W. & N. Ry. Co., 181 Pa. 492.

*Thomas Earle White,* for appellee.—Aside from the question of holding over into a new term (the evidence of which was amply sufficient to justify the verdict in this case), but one question is presented for this court's consideration, to wit: Did the court below err in submitting to the jury the question as to whether or not the written lease produced by Augustus Black was executed as a lease for the premises or executed solely for the particular use which the plaintiff, Jane White, alleged? Unless it be the law of this commonwealth that the mere fact of executing a written agreement precludes the party executing it from explaining the circumstances under which, and the purpose for which, it was given, then the defendant has no ground for complaint, and all his numerous assignments of error must fall to the ground.

In the state of New York this question was fully and elaborately considered by the court of appeals in the case of Grierson v. Mason, 60 N. Y. 394.

The law is the same in Pennsylvania: In re Gangwere's Estate, 14 Pa. 147.

OPINION BY RICE, C. J., July 26, 1900:

This was an action for rent for the year beginning June 1, 1892. The question arising upon this appeal is as to the defendant's liability by reason of his failure to give three months' notice of removal assuming that he did not hold over after May 31, 1892.

The plaintiff alleged and gave evidence that the defendant went into possession in 1890 as administrator of William Black, deceased, under a lease to the latter, which provided, " that either party hereto may determine this lease at the end of said term," (ending May 31, 1891), " by giving the other notice thereof, at least three months prior thereto, but in default of such notice, this lease shall continue upon the same terms and conditions as are herein contained for a further period of one year and so on from year to year unless or until terminated by either party hereto giving to the other three months' notice for removal previous to the expiration of the then current term ;"

that prior to the expiration of the term a parol agreement was entered into whereby the defendant was to have the premises in his own right after the expiration of the current year upon the terms and conditions of the written lease to William Black above referred to; and that the defendant remained in possession under this oral agreement, and did not give three months' notice of removal prior to the expiration of the year ending May 31, 1892.

The defendant denied the oral agreement above referred to, and alleged that he went into, or rather remained in, possession after May 31, 1891, under an undated lease (partly in writing and partly in print, in which most of the blanks, and especially that relating to notice of removal, were left unfilled), which, as he alleged, was signed and delivered to him prior to June 1, 1891.

In rebuttal, the plaintiff offered and under objection gave evidence from which, if competent, a jury would have been justified in finding that the defendant did not go into possession under the lease last referred to; that it was not executed until after the term had well progressed; and that it was then signed and given to the defendant, at his request for the specific purpose, and for that purpose only, of being used by him to show, in litigation then pending in court between him and a third person, that the plaintiff had admitted him in his own right as tenant of the premises.

The first and most important question is as to the admissibility of this rebutting testimony. One of the exceptions to the ancient rule upon the subject of the admissibility of parol evidence to affect written instruments is, that the parties may prove the existence of any separate oral agreement as to any matter on which a document is silent, and which is not inconsistent with its terms, if from the circumstances of the case the court infers that the parties did not intend the document to be a complete and final statement of the whole of the transaction between them: Stephen's Evidence, sec. 90. The fact that the parties did not so intend is not necessarily nor ordinarily to be inferred from the mere fact that a prior separate oral agreement is not contained in the document. If, however, the document is silent on the subject, it may be proved by parol evidence of what took place at the time of the execution of the document

that a prior separate oral agreement, not inconsistent with the terms of the document, or with any implied agreement growing out of it, was not intended to be abrogated. Such testimony is admissible not only where the separate oral agreement was omitted from the writing by fraud, accident or mistake,—which, if the facts warrant the allegation, is a distinct ground for equitable relief—but also where, though no fraud was practiced or intended at the time of the execution of the paper, it would be sanctioning a fraud to permit the paper to be used for a different purpose from that for which it was given, in order to defeat the rights of the other party under the separate oral agreement, and thereby give an unfair advantage.

In Parke v. Chadwick, 8 W. & S. 96, it was said that, "it is as much a fraud to obtain a paper for one purpose, and use it for a different and unfair purpose, as to obtain it by fraudulent statements."

In Renshaw v. Gans, 7 Pa. 117, it was said: "All the cases shown, that to pave the way for the reception of oral declarations, it is not necessary to prove a party was actuated by a fraudulent intention at the time of the execution of the writing. His original object may have been perfectly honest and upright; but if to procure an unfair advantage to himself, he subsequently deny the parol qualification of the written contract, it is such a fraud as will, under the rules, operate to let in evidence of the real intent and final conclusion of the contractors."

Again, in Rearich v. Swinehart, 11 Pa. 233, it was said: "Nor is it essential to the admission of parol evidence that a fraud was originally intended. It is enough that, though the parties acted in mutual good faith at the inception of the transaction, an attempt is made to wrest the instrument to a purpose not contemplated, or to use it in violation of the accompanying agreement. It is as much a fraud to obtain a paper for one purpose, and to use it for a different and unfair purpose, as to practice falsehood or deceit in its procurement."

The doctrine of these cases was, apparently, not wholly approved in Fulton v. Hood, 34 Pa. 365, but it was reiterated in Lippincott v. Whitman, 83 Pa. 244, also in Cullmans v. Lindsay, 114 Pa. 166, and has been recognized in many later cases. In the last cited case it was said: "For although the original

design of the defendants' agent may have been honest, it is a fraud in the defendants, in order to procure an unfair advantage, subsequently to deny the parol qualification, upon the faith of which the contract was made; evidence of the real intent of the parties at the time, therefore, becomes admissible."

There is another view of the question worthy of consideration. In Drinker v. Byers, 2 P. & W. 528, it was said: "It is certainly true that when articles of agreement for the sale of land are carried into execution by a conveyance from the vendor and bonds from the vendee, the contract in general is considered as closed, unless in extreme cases showing gross misapprehension or fraud. . . . This, however, is but a general rule to which there are exceptions. See Brown v. Moorhead, 8 S. & R. 569; and is founded merely on presumption, which may, as I apprehend, be rebutted by circumstances or parol evidence." The same doctrine was recognized in Close v. Zell, 141 Pa. 390, where it was held that a parol stipulation by the vendor of land, to refund the purchase money in the event of a failure of title, and to reimburse the vendee for any costs and expenses incurred, was not merged in a deed containing a covenant or special warranty but no covenant of title, afterwards accepted by the vendee in consideration thereof.

The case at bar, whilst not exactly parallel, resembles an English case cited by Mr. Anson in his work on Law of Contract, sec. 261 to illustrate the rule of law as to the admissibility of parol evidence of the supplementary terms of a contract not put into the writing, "not to vary but to complete the written contract." The case was this: Jervis agreed to assign to Berridge a contract for the purchase of lands from M. The assignment was to be made upon certain terms, and a memorandum of the bargain was made in writing, from which at the request of Berridge some of the terms were omitted. In fact (and this is to be particularly noticed) the memorandum was only made in order to obtain a conveyance of lands from M. When this was done and Berridge had been put in possession he refused to fulfil the omitted terms which were in favor of Jervis. On action being brought he resisted proof of them, contending that the memorandum could not be added to by parol evidence. Lord SELBORNE, however, held that the memorandum was "a mere piece of machinery obtained by the defendant as subsidiary to

and for the purpose of the verbal and only real agreement under circumstances which would make the use of it for any purpose inconsistent with that agreement, dishonest and fraudulent:" Jervis v. Berridge, 8 Ch. App. 351.

In Martin v. Berens, 67 Pa. 459, Mr. Justice WILLIAMS exhaustively stated the exceptions to the general rule excluding parol evidence, and including amongst them cases, where it was offered; "to rebut a presumption or equity," citing Bank v. Fordyce, 9 Pa. 275; Musselman v. Stoner, 31 Pa. 265, also "to supply deficiencies in the written agreement," citing Miller v. Fichthorn, 31 Pa. 252; Chalfant v. Williams, 35 Pa. 212. See also Coughenour v. Suhre, 71 Pa. 462; Honesdale Glass Co. v. Storms, 125 Pa. 268; Grierson v. Mason, 60 N. Y. 394.

Apparently it was not important, in the litigation in which the defendant desired to use the paper, to show the terms and conditions of his tenancy; it was only important to show that he was tenant in his own right of the premises. The paper was given to him for that specific purpose, and not as the consummation of prior negotiations between them or as a fulfilment and execution of a prior executory agreement, if the plaintiff's testimony is to be believed. The fair inference from that testimony is, that neither party intended it for any other purpose, or supposed that it abrogated and annulled the terms and conditions of the oral lease under which the defendant went into, and was holding, the possession. Unless it be the law, which we do not think it is, that there is an irrebuttable presumption that such was the intention, or that the paper had that effect irrespective of the intention, the evidence under consideration was admissible.

In reply to the suggestion that the plaintiff did not allege in her testimony that she would not have executed the paper had it not been for the representations made, it seems sufficient to refer to the marks of Mr. Justice CLARK in Cullmans v. Lindsay, 114 Pa. 166: "But the fact, whether or not the parol promise was the inducing cause of the execution of the written contract, especially when the mental purpose is not at the time expressed, is, in general, an inference to be drawn from the facts. These facts are to be exhibited in the proofs, and the work of inference is for the jury." The principle is applicable here.

It is urged in the second place, that, even if the testimony was admissible, the facts alleged by the plaintiff in rebuttal were not sustained by the quantity and quality of evidence required in such cases, and therefore it was insufficient to warrant the submission of the case to the jury. As to the main facts, namely, that the defendant represented that the purpose for which he desired the paper he requested the plaintiff to sign was to prove his tenancy in the litigation between him and his sister-in-law, and that this representation and request (whether made directly to the plaintiff by the defendant or by her son acting as his spokesman) were made and the paper was delivered in pursuance thereof after the term beginning June 1, 1891, had well progressed, the plaintiff's testimony agreed with that of her son, and their testimony was corroborated to some extent by the appearance of the paper itself—none of the blank spaces in the usual conditions, stipulations and covenants being filled. These two witnesses disagree, it is true, as to the month when the transaction took place, but we do not deem this such a discrepancy as necessarily deprived the testimony of the son of all corroborative effect. It may be conceded that the plaintiff was bound to make out her allegation as to what took place at the execution of the writing by the testimony of two witnesses or of one witness corroborated by other facts and circumstances which gave it greater weight than that of the defendant, or which were equivalent in weight to a second witness, but we are not convinced that the corroboration of plaintiff's testimony was not fully up to this standard. When it is said that the testimony in such cases must be clear, precise and indubitable, it is not meant that there must be no opposing testimony, but that it must carry a clear conviction of its truth. The learned trial judge was not requested to instruct the jury that there was not that quantity or quality of proof which was required to sustain the plaintiff's allegations, and we are of opinion that he would not have been justified in giving such instructions even if he had been requested to do so.

Complaint is made that the court failed to instruct the jury as so what would constitute a fraudulent use of the paper, and left them to infer that any use of it which might seem to them fraudulent would justify them in finding a verdict for the plain-

tiff. We do not so understand the charge. After calling attention to the plaintiff's allegation as to the special purpose for which the lease was requested and given, the learned judge said : " Suppose you ignore Augustus Black's testimony—but you cannot do that without you find something in the case to warrant you in doing that—first, is there anything in the testimony of these two people that without reasonable doubt leads you to believe that this man is now making a fraudulent use of that paper in producing it before you to show it was the lease under which he was a tenant? Unless you find that fact affirmatively—and you cannot find it affirmatively unless the person who attempts to escape from the lease proves it to your satisfaction, because the onus is upon her—unless you find that to your satisfaction, that lease holds, and under that lease the term ended May 31, 1892, and Mr. Black had a right to lock that place up at half past eleven on that night and take the key to Mrs. White and surrender possession." Here was a plain indication that the question for the jury was whether or not the defendant had obtained the paper for one purpose and was then attempting to use it for a different and unfair purpose. This was the fraudulent use referred to in the prior part of the charge embraced in the tenth assignment of error. Taken as a whole the instructions upon this subject were not misleading. Doubtless more specific instructions would have been given had they been asked.

The suggestion that the court intimated to the jury that they might ignore the defendant's testimony is unsustained. The context above quoted shows that the jury could not possibly have understood that that was what was meant, but rather, that, even if that testimony was ignored, yet the plaintiff could not recover, unless the evidence introduced by her satisfied the jury beyond a reasonable doubt that the defendant was attempting to make a fraudulent use of the paper. We remark in this connection that there is an evident typographical error in the eleventh assignment as printed in the paper-book. The word there printed "not" should be "now," as the charge shows.

It is to be observed, and this applies to all the assignments relating to the charge, that there was no request for special instructions. Where in such a case the complaint is that the charge was inadequate or one-sided and particular error of law

or misstatement of evidence cannot be pointed out, the court will be reviewed on the general effect of the charge and not upon sentences or paragraphs disconnected from the context which qualifies and explains them; if as a whole the charge was calculated to mislead, there is error; if not, there is none. This has been held repeatedly. Looking at the charge as a whole we cannot say that it was either inadequate or misleading.

The evidence embraced in the seventh assignment was competent for the purpose stated in the offer and for that purpose only, namely, to repel the inference or argument, for which the defendant had laid ground, that the plaintiff's claim that the defendant was in under the terms of the old lease was a fabrication of recent date. The leading Pennsylvania cases bearing upon the question of the admissibility of this kind of testimony are cited in the opinion of our Brother W. D. PORTER in Quigley v. Swank, 11 Pa. Superior Ct. 602. To these may be added Crooks v. Bunn, 136 Pa. 368, Harvey v. Gunzberg, 148 Pa. 294, and Thomas v. Miller, 165 Pa. 216. See also Huckestein v. Kelly, 152 Pa. 631.

The other assignments do not require particular notice. We discover no error in the record for which the judgment should be reversed. The judgment is affirmed.